DECISION
This matter is before the Court on Defendants' Motion for an Order Requiring Individual Notice to Each Property Owner and Specifying the Manner in which Owners shall be Heard. The Motion as filed was accompanied by a number of affidavits in support thereof as well as three bound volumes containing the full text of 76 cases claimed by Defendants to constitute legal authority for the proposition advanced by them in said Motion. Plaintiff has responded in written form and the Court has had the benefit of four separate memos and of extensive oral argument all addressing the issue of whether Plaintiff Attorney General should be required to give direct personal notice of the pendency of these proceedings to approximately 330,000 property owners that is to say the owners of all property (meaning property on which buildings have been erected) constructed prior to 1978 situated in the State of Rhode Island. The figure of 330,000 is derived from the estimate (of the Attorney General) that 80 percent of all homes and buildings in Rhode Island, in fact, were built prior to 1978. The Defendants' position essentially is that the due process provisions found in the Constitution of the United States as well as the Constitution of the State of Rhode Island mandate that such notice be given by the Plaintiff. In a nutshell, Defendants reach that conclusion predicated on their theory that there will be a "taking" of the property of the 330,000 homeowners if it is determined that a public nuisance exists as a result of the trial of Phase I of this case scheduled to commence on September 4, 2002, and limited to the issue of: "Does the presence of lead pigment in paint and in coatings, in homes, schools, hospitals and other public and private buildings throughout the State of Rhode Island constitute a public nuisance?"
In support of their proposition, Defendants, through the aforementioned affidavits, present a catalog of horrors which the affiants state will occur as a result of an affirmative answer to the question to be posed to the Phase 1 jury. That catalog includes, but is not necessarily limited to, a drying up of available mortgage funds, declaration of mortgage defaults, cancellation of or the unavailability of liability insurance coverage, substantial diminutive in real estate values and so forth. Defendants, citing to a number of opinions both from the United States Supreme Court and our Supreme Court, tell us that such a result represents a taking of property interests and that failure to bring in the 330,000 owners to be effected by such a finding before trial deprives such owners of their property interests without giving them an opportunity to participate and to be heard.
Heretofore this Court has noted in open court at a hearing on June 28, 2002, that it was going to deny Defendants' Motion. Further, the Court indicated that it would, on or before the close of business on Friday, July 5, 2002, file a written decision so holding. This is that written decision.
Plaintiff would have this Court summarily reject and deny Defendants' Motion on the grounds that it is a rehash of motions heretofore decided by this Court in a manner contrary to Defendants' current motion. Essentially, without specifically stating so, Plaintiff's objection is, in the first instance, that the law of the case precludes further consideration by the Court of Defendants' request. This Court is well aware that the law of the case doctrine is flexible and, because the Court's decision is predicated on other grounds, it finds no present need to comment further with respect to that aspect of Plaintiff's objection to Defendants' Motion.
A review of the case law presented to the Court, of course, predictably discloses no case that is on all fours with the facts here presented. The Court notes the heavy reliance by the Defendants on the United States Supreme Court 1972 opinion in Fuentes v. Shevin, 407 U.S. 67, a due process case dealing with the rights to personal property implicated by replevin laws that permitted the ousting from possession of one holding personality without a prior opportunity to be heard. Also heavily relied upon by Defendants are Rhode Island Supreme Court opinions primarily dealing with tax titles and foreclosure of rights of redemption with respect thereof. See Harvey Realty v. Killingly Manor Condominium Ass'n,787 A.2d 465, 468 (R.I. 2001) and Robert P. Quinn Trust v. Ruiz,723 A.2d 1127, 1129 (R.I. 1999). Those cases, of course, in reliance not only on state constitutional rights but on opinions of the United States Supreme Court dealing with the 14th Amendment require personal notice to those with an interest in the property being foreclosed upon. A common thread running through Fuentes and the Rhode Island Supreme Court tax title cases is that possessory rights, legal rights, rights of ownership or reversion, or property rights were being taken without an opportunity for the affected party to be heard. In the case at bar, Defendants' proffered affidavits speak not to legally cognizable property rights that will be taken but rather to indirect affects to such buildings that will impact not legal rights but property values. This Court believes that this distinction is substantial and is dispositive of the motion addressed herein. Issues affecting value in the broadest sense are beyond the power of the court. Issues affecting ownership interests are within traditional notions of property rights protected by due process. Accordingly, because neither property rights nor possessory interests are implicated in the case at bar even if the Court were to accept as binding upon it the mentioned affidavits, this Court finds that an indirect affect on property values does not warrant requiring notice from Plaintiff to the 330,000 property owners or to their insurance carriers or mortgagees.
Finally, in dealing with the Motion before the Court it is important not to lose sight of the central issue to be determined by the fact finder, that is, as stated above "does the presence of lead pigment in paint and in coating, in homes, schools, hospitals and other public and private buildings throughout the State of Rhode Island constitute a public nuisance?" Put differently, but asking the same question, "is the cumulative effect of lead pigment in paint and in coatings, found in homes, schools, hospitals and other public and private buildings throughout the State of Rhode Island the creation of a public nuisance?" Here the jury is not to be asked if each such property is a separate public nuisance but rather, as to whether the cumulative effect of all such properties constitutes a single public nuisance. If the issue before the Court were as to the public nuisance status of each of the separate properties then clearly the owners of such properties would be parties and as such would be entitled to due process which would include the right to individual notice, and the right to be heard.
This Court has endeavored throughout the several hearings hereinbefore held in this matter to make clear to the parties that it is the collective effect that will be the focus of Phase I. The Court notes that not only counsel for the Plaintiff but also counsel for the Defendants at recent hearings have acknowledged this fact.[1]
While the voluminous memoranda supplied to the Court with respect to the issue of notice were wide ranging and addressed issues such as standing and which Rule of Civil Procedure was the appropriate vehicle by which to include the property owners, for the reasons hereinabove set forth this Court finds no reason to address those issues.
Defendants' Motion is denied.
Counsel for the prevailing party shall prepare an appropriate order which shall be presented for entry upon notice to all the other parties.
[1] Transcript of Wednesday, May 1, 2002, quoting Mr. Philip Curtis (counsel for Atlantic-Richfield), p. 9, lines 13-16:
 ". . .
 MR. CURTIS: . . . We understand. We've been told our particular property case is, at the very least, in abeyance. I am talking about the whole thing taken as a whole and that's what their case is. . . . "
Transcript of Wednesday, June 12, 2002, quoting Ms. Jennifer Heisinger (counsel for National Lead Industries), p. 6, lines 13-17:
 ". . .
 MS. HEISINGER: . . . The relevance to that is obviously to refute the plaintiff's claim that every house containing lead poses a harm to its inhabitants.
 THE COURT: Separately or collectively?
 MS. HEISINGER: Collectively."
 . . . "
Transcript of Wednesday, June 12, 2002, quoting Ms. Linn Freedman (Assistant Attorney General, State of Rhode Island), p. 14-15, lines 12-13:
 ". . .
 THE COURT: Let me be very blunt and very direct. What if during the course of the trial, after you have completed the presentation of the State's case and the defense begins, they seek to introduce evidence with respect to the condition of seventy enumerated properties? Appropriate for Phase 1, as you view it?
 MS. FREEDMAN: I do not believe that that's appropriate for Phase 1.
 THE COURT: Why?
 MS. FREEDMAN: Because we're not talking about individual properties here, and we're not talking about the condition of properties, because specifically if they want to bring that —
 THE COURT: Is the State going to be introducing evidence as to the condition of any single property?
 MS. FREEDMAN: No.
 THE COURT: You will recall that's a question I asked your sister a few moments ago, whether she was talking collectively or singularly.
 MS. FREEDMAN: We are talking collectively. We have always been talking collectively, and our experts are talking collectively. We are not going to bring in a property owner to talk about the condition of an individual property. We are going to use statistics. We are going to use expert testimony to show the problem, how many children are poisoned, how many units in Rhode Island are estimated to have lead in it. And, . . . "